# NO. 12-13-00137-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR THE* | § | *APPEAL FROM THE* |
| *BEST INTEREST AND PROTECTION* | § | *COUNTY COURT AT LAW* |
| *OF G.T.* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

G.T. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In one issue, G.T. asserts the evidence is legally and factually insufficient to support the trial court's order. We affirm.

### BACKGROUND

On April 11, 2013, Jill Pontius, M.D. signed an application for an order to administer psychoactive medication-forensic to G.T. In the application, Pontius stated that G.T. was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. She testified that G.T. had been diagnosed with bipolar 1 disorder, manic, severe with psychotic features, and requested the trial court to compel G.T. to take four psychoactive medications, including antidepressants, anxoilytics/sedatives/hypnotics, antipsychotics, and mood stabilizers. According to Pontius, G.T. refused to take the medications voluntarily. She also testified that, in her opinion, G.T. lacked the capacity to make a decision regarding administration of psychoactive medications because he had no insight into his mental illness or the need for treatment, and he believed the medications were "venom."

Pontius concluded that these medications were the proper course of treatment for G.T. and that, if he were treated with the medications, his prognosis would be improved with the possibility of competency restoration. Pontius believed that, if G.T. were not administered these medications, the consequences would be prolonged hospitalization and harm to others due to his agitation. Pontius

considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. She believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and G.T.'s best interest. Pontius also considered less intrusive treatments likely to secure G.T.'s agreement to take psychoactive medications.

On April 16, 2013, the trial court held a hearing on the application. At the close of the evidence, the trial court granted the application. On April 16, 2013, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medications was in G.T.'s best interest and that G.T. lacked the capacity to make a decision regarding administration of the medications. The trial court authorized the Department to administer psychoactive medications to G.T., including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, G.T. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensics. More specifically, G.T. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of the medications, and that treatment with the proposed medications was in his best interest.

## Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and

2

contrary to the trial court's findings. *Id***.** at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id***.**

## Order to Administer Psychoactive Medication

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2010). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id***.** § 574.106(a-1) (West 2010). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. *Id*. § 574.101(1) (West 2010). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. *Id*. § 574.106(b) (West 2010).

## Hearing on Application

At the hearing on the application, Pontius testified that she was not G.T.'s treating physician, but was covering for Dr. Self. According to Pontius, G.T. was currently under a court order for inpatient mental health services. She also stated that she completed the application for an order to administer psychoactive medication-forensic and swore that all the statements in the application were true and correct. Pontius stated that G.T. was suffering from bipolar 1 disorder, manic, severe, with psychotic features, and that he had verbally, or otherwise, refused to accept medication voluntarily.

3

She stated that G.T. has been charged with murder, but that none of these medications would interfere with G.T.'s ability to confer with his counsel on his underlying criminal charge.

According to Pontius, she believed that G.T. lacked the capacity to make a decision regarding the administration of psychoactive medication because he was devoid of insight and consistently refused to take medications. She also testified that G.T. told the admitting physician that he believed the medication was "venom." She stated that G.T. could not be convinced to take medications by the admitting physician and was informed by a nurse on the day of hearing that he would not take medication. Pontius testified that G.T. did not feel he needed medications despite being diagnosed with a psychotic disorder with psychotic symptoms. She also stated that to her knowledge, G.T. had been diagnosed with a major mental disorder by three different psychiatrists at different points in time, and refused the recommended treatment. She testified that prior to the alleged offense, G.T. had religious delusions of meeting the Virgin Mary, and documentation showed that G.T. was manic and psychotic before the alleged offense.

Pontius stated that G.T.'s psychotic features include paranoid delusions that medications were "venom." She did not know if G.T. meant that the medications were venom from a snake or, figuratively, that he did not believe it was healthy to take antipsychotic medications. Either way, she stated, G.T. needed to take his treatments as prescribed so that he could proceed with his legal situation. Further, Pontius testified, G.T. believed that his legal situation was resolved when it was not. She was not aware if G.T. expressed any constitutional or religious grounds for refusing to take medications.

Pontius testified that treatment with the medications set forth in the exhibit attached to the application was the proper course of treatment for G.T. and was in his best interest. She stated that if these medications were used, the benefit to G.T. would outweigh the risks. Pontius testified that G.T. would regain competency faster if these medications were used.

G.T. testified that his diagnosis of bipolar disorder with psychotic features was "misinformation." He did not believe he had a mental illness and did not want to take psychoactive medications because he did not believe he needed them. Further, he had never been diagnosed with a mental illness before being admitted to the hospital. G.T. knew that he had been charged with murder, but stated that he has not been found guilty and is "completely" innocent. However, G.T. stated that the last time he was in criminal court proceedings, that court mentioned "the church." He stated that the judge, prosecutor, and his criminal counsel should be investigated for competency because they "mix[ed]" court proceedings with the church. When asked if he told anyone that he had met the Virgin

4

Mary, he testified that it was a "private dispensation" and that the issue was not to be "thrown" in the criminal proceedings.

**Analysis**

G.T. does not dispute that the evidence is legally and factually sufficient to show that he is under a court order to receive inpatient mental health services. Thus, we will consider whether the evidence is legally and factually sufficient to support a finding that he lacked the capacity to make a decision regarding the administration of psychoactive medications, and that treatment with the proposed medications was in his best interest. In the application, Pontius stated that she believed G.T. lacked the capacity to make a decision regarding administration of psychoactive medications because he had no insight into his mental illness or the need for treatment, and believed that medications were "venom." Further, Pontius determined that, if G.T. were not administered these medications, the consequences would be prolonged hospitalization and harm to others due to his agitation. At the hearing, Pontius testified that G.T. did not feel he needed medications despite being diagnosed with a psychotic disorder with psychotic symptoms. She also stated that to her knowledge, G.T. had been diagnosed with a major mental disorder by three different psychiatrists, that G.T. had religious delusions of meeting the Virgin Mary, that he was manic and psychotic before the alleged offense, and that he incorrectly believed his legal situation was resolved.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that G.T. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications was in his best interest. *See id*. § 574.106(a-1); *In re J .F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

Having determined that the evidence is legally sufficient to support the finding, we address factual sufficiency and consider all the evidence, both that in support of and contrary to the trial court's findings. *See In re C.H.*, 89 S.W.3d at 27-29. G.T. asserted that he did not want to take psychoactive medications because he was not mentally ill, nor had he ever been diagnosed with a mental illness. He seemed to refer to his meeting with the Virgin Mary as a "private dispensation," and did not believe it merited a discussion in a criminal proceeding. The right to refuse treatment, and the right of patients, generally, to direct the course of their treatment are important. By its very nature, however, involuntary treatment is against the stated wishes of a patient. The trial court must consider G.T.'s preferences and beliefs, but need not simply defer to them. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

G.T. testified that he did not believe he needed psychoactive medication because he was not mentally ill. Pontius testified that he was mentally ill, had psychotic features, and had been diagnosed with a mental illness on three previous occasions. It is presumed that the trial court gave G.T's preferences and beliefs due consideration. The basic thrust of Pontius's testimony, that G.T.'s mental illness precluded his consideration of taking psychoactive medication, was unrebutted. Furthermore, G.T. did not allude to any side effects or religious objections to taking these medications.

Based upon our review of the record as a whole, we conclude that the conflicting evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that G.T. lacked the capacity to make a decision regarding administration of the proposed psychoactive medications and that the proposed medications were in G.T.'s best interest. *See id.* § 574.106(a), (b); ***In re C.H.***, 89 S.W.3d at 25. Therefore, the evidence is factually sufficient to support the trial court's order. We overrule G.T.'s sole issue.

## DISPOSITION

Having overruled G.T.'s sole issue, we ***affirm*** the order of the trial court authorizing the Texas Department of State Health Services to administer psychoactive medication-forensic.

## SAM GRIFFITH
Justice

Opinion delivered July 3, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

### JULY 3, 2013

### NO. 12-13-00137-CV

### THE STATE OF TEXAS FOR THE BEST
### INTEREST AND PROTECTION OF G.T.

Appeal from the County Court at Law

of Cherokee County, Texas. (Tr.Ct.No. 40,305)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below authorizing the Texas Department of State Health Services to administer psychoactive medication-forensic **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*